Alan K. Hyde (018412)
Christopher S. Welker (020060)
**HOLM WRIGHT HYDE & HAYS PLC**
10429 South 51st Street, Suite 285
Phoenix, Arizona 85044
(480) 961-0040
ahyde@holmwright.com
cwelker@holmwright.com
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Air Medical Services, Inc., d/b/a International Life Flight; and International Air Medical Services, Inc. d/b/a International Life Flight; Francisco Ortiz-Maldonado, as assignor of benefits to International Air Medical Services, Inc. | Case No. |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| vs. | |
| Triple-S Salud, Inc., a/k/a Blue Cross Blue Shield of Puerto Rico, a licensee of the Blue Cross Blue Shield Association, and a subsidiary of Triple-S Management Corporation. | |
| Defendant, | |

This is an action under ERISA, 29 U.S.C. 1001 *et. seq.* whereby Plaintiffs Francisco Ortiz-Maldonado as assignee of International Air Medical Services, Inc., dba International Life Flight ("Ortiz-Maldonado") and International Air Medical Services, Inc., dba International Life Flight ("IAMS") by and through legal counsel, file this Complaint against Defendant Triple-S Salud, Inc. ("Triple-S Salud"), and state as follows:

1

47705607.1

## NATURE OF THE SUIT

This is an action under ERISA, 29 U.S.C. 1001 *et. seq.* by Ortiz-Maldonado and/or, if and as deemed a necessary party, by IAMS, against Triple-S Salud for recovery of insurance and healthcare plan benefits under a Triple-S Salud issued employee welfare benefits plan ("Plan") in which Ortiz-Maldonado was a Member/enrollee. Upon information and belief, Defendant has improperly withheld benefits owed to Ortiz-Maldonado including the emergency air ambulance services provided by IAMS as his assignee and personal representative; and, committed violations of ERISA's claim procedure and disclosure requirements.

## JURISDICTION AND VENUE

1. Upon information and belief, this Court has jurisdiction over this action, pursuant to, *inter alia*, 29 U.S.C. § 1332(e), (f) and 28 U.S.C. § 1331.

2. Upon information and belief, venue is proper under, *inter alia*, 28 U.S.C. § 1391 because the Plaintiff has its headquarters and operates from this District; Plaintiff coordinated and billed the emergency international air ambulance flight services provided to Maldonado in this District; and, IAMS prosecuted Maldonado's claim over the intervening months, received the denials of benefits, and discovered the breach of the health and welfare plan in this District.

## PARTIES

3. Ortiz-Maldonado is a resident of Puerto Rico. He was entitled to benefits under the Plan as a direct Member/enrollee.

47705607.1

4. IAMS is an Arizona-based air ambulance services provider. On the afternoon of March 20, 2013, IAMS transported Ortiz-Maldonado by air ambulance from Tampa, Florida to San Juan, Puerto Rico for emergency treatment of pulmonary hypertension.

5. Defendant Triple-S Salud is a Puerto Rican entity which provides health care benefits to Puerto Rican businesses and their enrolled employees and families. Triple-S Salud is a licensee of Blue Cross Blue Shield Association, serving citizens and businesses in Puerto Rico. Triple-S Salud is a subsidiary of Triple-S Management Corporation.

6. Upon information and belief, Triple-S Salud is the Claims Administrator for the Plan.

7. Upon information and belief, Ortiz-Maldonado's employer's Employee Benefit Plan and its purchase of health care insurance from Triple-S Salud constitutes an Employee Health Benefit Plan as defined in, *inter alia*, ERISA, 29 U.S.C. § 1002.

8. Upon information and belief, Triple-S Salud is the Plan Administrator as defined by ERISA and had discretionary authority to make final decisions regarding the payment of medical benefit claims for the Plan.

9. In referring herein to a Triple-S Salud Case Manager, all such references are made to one individual, a Ms. Silvestrini, who is a Triple-S Salud Case Manager employee working in the Authorizations Department.

10. At all relevant times, Ortiz-Maldonado was a beneficiary and Plan Member/enrollee.

11. At all relevant times IAMS has been and was the assignee of Ortiz-Maldonado pursuant to an Assignment of Benefits and an Appointment of Personal Representative executed by Ortiz-Maldonado. Thus, IAMS 'stands in the shoes' of Ortiz-

3

47705607.1

Maldonado and has standing to assert whatever rights Ortiz-Maldonado possesses, relating to the Plan, this claim, including the right to pursue administrative remedies and the right to pursue this lawsuit.

12. Upon information and belief, Triple-S Salud exercised authority to make final decisions regarding the payment of medical benefit claims for the Plan. Accordingly, Plaintiffs are informed and believe that Triple-S Salud is, *inter alia*, either a 'named fiduciary' of the Plan pursuant to 29 U.S.C. § 1133(2); and/or a 'deemed fiduciary' pursuant to 29 U.S.C. § 1002(21)(A); and/or a 'designated fiduciary' pursuant to 29 U.S.C. § 1105(c)(1)(B).

13. Blue Cross Blue Shield ("BC/BS") of Arizona ("BC/BS of AZ") may be referred to herein as the 'local plan,' as IAMS is an Arizona-based provider; and BC/BS AZ is therefore 'local' with respect to IAMS under the vernacular.

14. Triple-S Salud may be referred to herein as the 'home plan.'

## FACTUAL ALLEGATIONS

15. At all relevant times, IAMS was a qualified, licensed air ambulance services provider.

16. On February 22, 2013, Ortiz-Maldonado was admitted to the H. Lee Moffitt Cancer Center ("Moffit Cancer Center") in Tampa, Florida. He began treatment for leukemia.

17. Nearly one month later, on March 20 2013, while being treated for leukemia, severe pulmonary hypertension threatened Ortiz-Maldonado's life.

18. It became imperative that Ortiz-Maldonado be flown back to Puerto Rico for treatment of the now life-threatening pulmonary hypertension by his long-time physician

Dr. Haydee, who was familiar with treating Ortiz-Maldonado for this condition. Dr. Haydee agreed to assume his care.

19. The Moffit Cancer Center was not a facility at which Ortiz-Maldonado could be treated for pulmonary hypertension.

20. IAMS was contacted by Ms. Briars, a Case Manager at the Moffit Cancer Center and asked to prepare to transport Ortiz-Maldonado by air ambulance to San Juan Puerto Rico.

21. Ms. Briars had previously contacted Ms. Silvestrini, a Case Manager at Triple-S Salud in San Juan who, upon information and belief, confirmed insurance coverage for Ortiz-Maldonado. Upon information and belief, coverage was confirmed by Briars inquiring of Silvestrini, as she replied to IAMS "…BC/BS of Puerto Rico says that they cover the flight…there is no limit."

22. IAMS next contacted Silvestrini directly, requesting a pre-authorization to provide the air ambulance services to Member/enrollee Ortiz-Maldonado. But numerous hours lapsed with no word from Silvestrini.

23. As the morning of March 20 progressed, Ortiz-Maldonado's medical condition deteriorated to the degree where returning to San Juan had become a medical emergency. This determination was made by Dr. Pinilla, Ortiz-Maldonado's attending physician at the Moffit Cancer Center. Dr. Pinilla notified IAMS of his determination by faxed letter. Pulmonary hypertension threatened Ortiz-Maldonado to such a degree, that Dr. Pinilla declared the pending air ambulance transport to have become an emergency. IAMS immediately took steps to transport Ortiz-Maldonado.

47705607.1

24. Upon information and belief, the Plan does not require a pre-authorization for emergency air ambulance services.

25. The transport of Ortiz-Maldonado had become emergent.

26. IAMS conducted the air ambulance transfer. IAMS conducted each and every aspect of the air ambulance flight, including providing ground transportation wherein IAMS' crew accompanied Ortiz-Maldonado from his bedside at the sending facility to his bedside at the receiving facility in San Juan.

27. Triple-S Salud has never contested the medical necessity of the transport.

28. Triple-S Salud has never contested Ortiz-Maldonado returning to Puerto Rico for treatment by Dr. Haydee.

29. At issue, *inter alia*, is Triple-S Salud's refusal to pay IAMS which conducted the emergency air ambulance transport of Ortiz-Maldonado, implying that because it had 'authorized' another provider to conduct the services it has no obligation to IAMS.

30. At issue, *inter alia*, is the prospect of whether Triple-S Salud authorized another air ambulance service to provide the air ambulance services to Ortiz-Maldonado, and whether or not such an authorization relieves Triple-S Salud of the obligation of paying for the services rendered by IAMS.

31. At issue, *inter alia*, is whether refusing to pay IAMS by claiming that an after-the-fact authorization of another service provider relieves it from the responsibility of paying for the services at all can be made in 'good faith.'

32. At issue, *inter alia*, is the failure of Triple-S Salud to recognize the emergent nature of the transport, Dr. Pinilla's determination and opinions, and as the air medical flight had become emergent, whether an authorization was then still necessary.

6

33. At issue, *inter alia*, is the failure of Triple-S Salud to provide IAMS with any information about the Ortiz-Maldonado claim, notwithstanding the many requests from IAMS for copies of the Summary Plan Description, the Plan itself, records, and/or such other claim information, including the administrative record and basis for its adverse benefits determination(s) that ERISA says a Plan must produce, and which have been requested by IAMS.

34. At issue, *inter alia*, is the many months of wrongful, purposeful denial and delay and interest on the unpaid claim properly filed in July of 2013.

35. At issue, *inter alia*, is Triple-S Salud allowing Ms. Silvestrini, the very Case Manager who concocted the rationale of denial to continue as the principal analyst/stakeholder in making claim determinations.  Upon information and belief, it is Silvestrini that is making the determinations of payment or denial in IAMS' continued prosecution of the Ortiz-Maldonado claim.

36. At no time during the provision of air ambulance services was IAMS informed or otherwise made aware that another provider had or may have been authorized to conduct the air ambulance flight.

37. At no time during the provision of air ambulance services was IAMS told that it would not be paid by Triple-S Salud for the life-saving services it rendered to Ortiz-Maldonado.

38. Not until the following day, the 21st, long after the conclusion of the services did IAMS receive a communication from Silvestrini to the effect that another air ambulance service had been authorized to provide such services to Ortiz-Maldonado.  While this 'stand

down' notice purports to be a fax from Silvestrini made on the afternoon of 20 March 2013, it lacks the sending time and date stamp confirmations that other of her faxes have.

39. Notwithstanding the date and time on the fax, it was not received by IAMS until the following day after the services were rendered in total.

40. Silvestrini later admitted that she knew that IAMS was not aware of any such notice or request to stand down. And, during the time leading up to the flight she did not telephone, email, fax, or otherwise contact IAMS directly or by a third party with a notice to stand down, although she had a continuing opportunity to do.

41. The Moffit Cancer Center Case Manager did not communicate to IAMS anything in the nature of a stand down.

42. Ortiz-Maldonado and his family who were present and communicating with Triple-S Salud and hospital staff regarding his treatment and transportation did not tell IAMS of a request to stand down or that Silvestrini had informed the family that if IAMS was to perform the services, the Ortiz-Maldonado family would be responsible for paying IAMS.

43. Ortiz-Maldonado and his family desired that IAMS provide the air ambulance services.

44. At no time during its presence in Tampa, or coming or going to and from the airport, did the IAMS flight or medical team become aware of any stand down order or the presence of a competitor to transport Ortiz-Maldonado.

45. Upon information and belief, there was no competing air ambulance service in the hospital, at the airport, or enroute to Tampa. The presence of another service would have put IAMS on notice of at least some irregularity.

47705607.1

46. On the morning of the 20th of March, 2013 Ortiz-Maldonado signed a contract with IAMS for its services.

47. IAMS would have breached its contractual and civil duty to Ortiz-Maldonado as a first responder had IAMS not proceeded swiftly after being told of the now emergent circumstances of the flight.

48. Upon information and belief, the Plan provides for air ambulance transportation.

49. Upon information and belief, Ortiz-Maldonado was allowed to select a provider under the Plan.

50. Under the contract with IAMS Ortiz-Maldonado not only selected IAMS as his provider, but also assigned his benefits to IAMS and appointed IAMS as his authorized representative for purposes of prosecuting his claim for air ambulance transportation benefits.

51. On 16 July IAMS' third party billing and collections firm submitted a claim to Defendant for the services provided to Ortiz-Maldonado requesting payment under the Plan.

52. IAMS' third party billing and collections firm also sent an ERISA violation notice to Triple-S Salud after 30 days had come and gone since Triple-S Salud's receipt of the initial claim and lack of a determination thereto.

53. IAMS billing and collections firm also requested copies of the Plan Summary, the claim, and administrative record.

54. Triple-S Salud produced nothing in response.

55. The initial claim was assigned claim number 530201319811110600 ("0600").

47705607.1

56. On information and belief, Triple-S Salud was set to pay the claim in August of 2013. Upon information and belief, IAMS' third party billing and collections firm contacted Triple-S Salud and was told that the claim was being processed and that IAMS should soon have a check number and date of issuance.

57. On August 26, 2013, IAMS was informed by its third party billing and collections firm that it should have an actual check in hand in 10 business days.

58. A payment of the initial claim (0600) has never been made. Rather, Triple-S Salud changed course and denied the claim and then simply voided it from the internal BC/BS claim tracking and management system (the "System"). On September 16, 2013, IAMS was informed that the claim was denied. It was denied under the rationale that there was a 'problem with a pre-authorization for another provider.'

59. On January 2, 2014, IAMS fired its third party billing and collections firm and (after a 60 day wind down) took its billing and collections back in-house.

60. On January 29, 2014, IAMS called the local plan (BC/BS of Arizona) and was told that the Ortiz-Maldonado claim had been voided from the System the day before and that the reason for the void was that pre-authorization had been approved for another provider. It is an ERISA violation to simply void a legitimate claim.

61. On January 30, 2014, IAMS mailed a second claim into Triple-S Salud. It would be assigned claim number 53020141001539300 ("9300").

62. Two months later IAMS was told by the local plan that the second claim mailed on January 30 to Triple-S Salud was still not in the System.

63. Over 3 months later IAMS was again told by the local plan that the second claim was still not in the System. IAMS was advised to submit another claim.

47705607.1

64. IAMS submitted a third claim to Triple-S Salud. It was given claim number 53020141000676000 ("6000"). But someone at the local plan or the home plan keyed in an incorrect total dollar amount, resulting in an error. This claim would later be denied.

65. On April 22, 2014, IAMS sent Triple-S Salud another ERISA violation letter for failure to timely process claim 9300.

66. IAMS General Counsel contacted Triple-S Salud via its website, asking for contact information to the Triple-S Salud legal department. Triple-S Salud did not respond.

67. A First Internal Level Appeal was mailed by IAMS on May 1, 2014. Upon information and belief, the first Internal Level Appeal was assigned to claim number (9300).

68. The First Internal Level Appeal was later denied (6/19/2014).

69. IAMS made numerous calls to the local plan, BC/BS of AZ, and the home plan, Triple-S Salud. Through May and early June of 2014 IAMS received three remittance advice letters from Triple-S Salud each having a 'zero-pay' advice.

70. On June 11, 2014, IAMS called and spoke with a Triple-S Salud Provider Customer Service Representative ("CSR") Jose, and was told that the Appeal should be sent to the Authorizations Department within Triple-S Salud. Upon information and belief, this was recommended by Jose as to persuade the Authorizations Department to issue an authorization after-the-fact to IAMS for payment. IAMS faxed the Appeal to Jose - but was later told that it was not delivered to the Authorizations Department.

71. IAMS again contacted the home plan. This time Jose, Triple-S Salud CSR told IAMS that he would see to it that the Appeal was delivered to the Authorizations Department. Upon information and belief, it was not delivered.

11

47705607.1

72. On June 19, 2014, the First Internal Level Appeal was denied.

73. On June 24, 2014, a Second Internal Level Appeal was mailed to both the local plan and the home plan. It would also be forwarded by the local plan to the home plan. The Second Level Internal Appeal was also faxed by IAMS directly to the Authorizations Department of Triple-S Salud.

74. Upon information and belief, the First Internal Level Appeal was assigned for an up or down determination to Ms. Silvestrini, the very same Triple-S Salud Case Manager who, after IAMS transported Ortiz-Maldonado, a day later sent IAMS a notice to stand down under the pretext that another provider had been pre-authorized to provide Ortiz-Maldonado's air ambulance transport.

75. The Second Internal Level Appeal was denied.

76. In addition to the first two Appeals, on July 11, 2014, IAMS faxed a letter to the Triple-S Salud Authorizations Department first, noting that no authorization was required for the then emergent flight, but also requesting such an authorization to IAMS for the services if it would be helpful to move the claim along.

77. IAMS received no response. IAMS received no authorization. Emails were sent and although opened, also not responded to by Silvestrini or anyone else at the Authorizations Department.

78. On July 16, 2014, IAMS again called to inquire about the Ortiz-Maldonado claim. IAMS was told by Drew, local plan CSR that a new fourth claim had been created, and the reason was that the home plan was having difficulty reconciling the pre-authorization (for another provider) in the claims management System. Upon information

and belief, it appeared to Drew that the 4th claim was created to allow for the payment of the Ortiz-Maldonado claim by getting around the 'other authorized provider' glitch.

79. At the same time Triple-S Salud sent IAMS an Explanation of Benefits showing, for the first time, that the total amount billed by IAMS for the flight was now being 'allowed' instead of denied.

80. This fourth claim 530201419503374 was created on July 12, 2014, and upon information and belief, later denied under the pretext - authorization was provided to another provider. This denial is contrary to the earlier explanation that the fourth claim was made to reconcile difficulties in the System that the 'another provider authorized' brought to processing the Ortiz-Maldonado claim.

81. On June 24, 2014, a fax from Triple-S Salud to IAMS indicated that the fourth claim also denied as pre-authorization provided to another provider, which is contrary to what IAMS was told the claim had been created to accomplish.

82. On July 29, 2014, IAMS yet again contacted the local plan and was told again to contact the Authorizations Department to try to get an authorization for payment.

83. On July 30, 2014, IAMS faxed its Second Internal Level Appeal to the Authorizations Department at Triple-S Salud.

84. IAMS inquired and was told that the Second Internal Level Appeal had been assigned to Silvestrini for a determination, Silvestrini being the Triple-S Salud Case Manager that concocted the 'another provider authorized' scenario. The Second Appeal was also subsequently denied.

85. On July 30, 2014, IAMS again faxed a request for an authorization for services from the Triple-S Salud Authorizations Department. IAMS did not receive any

13

47705607.1

sort of response from Triple-S Salud even after follow up emails, voice messages, and the fax itself.

86. On a number of occasions IAMS has requested that Triple-S Salud provide it with Plan and Claim information. Triple-S Salud has ignored every such request.

87. On August 5, 2014, IAMS made telephone contact with Silvestrini. During this telephone call Silvestrini admitted that on the day of the flight that she had not communicated to IAMS any information to stand down. Upon information and belief, she is driving the denial based on her initial rationale that another provider was pre-authorized. She must be recognized to be a stakeholder in the outcome of any subsequent determination to pay, which exposes Triple-S Salud to, *inter alia*, not only the air ambulance service fees but also accruing interest on such amounts.

88. On August 5, 2014, IAMS again demanded payment for the services and included an interest calculation based upon Triple-S Salud's purposeful failure to pay promptly the legitimate claim.

89. Upon information and belief, Triple-S Salud has not paid any provider for the services that enrollee/Member Ortiz-Maldonado received.

90. On September 29, 2014, IAMS received a Final Notice of Adverse Determination from Triple-S Salud rejecting the benefits payment request under the pretext that 'another service had been pre-authorized.'

91. IAMS had previously requested information from Defendant related to its decision to reject benefits under the Plan including, but not limited to, the Plan, the Plan Summary, correspondence, and the administrative record—but has received nothing responsive to date.

14

47705607.1

92. Triple-S Salud ignores the ERISA disclosure mandate.

93. The denial of benefits to Ortiz-Maldonado under the Plan was improper.

94. Plaintiffs have satisfied all of the jurisdictional prerequisites to filing a lawsuit in this Court for obtaining redress against Triple-S Salud.

**CAUSE OF ACTION**
**RECOVERY OF PLAN BENEFITS**

95. Plaintiffs incorporate and re-allege each and every allegation contained in the paragraphs above as though fully set forth herein.

96. Ortiz-Maldonado, as a beneficiary under the Plan, is entitled to recover benefits under the terms of the Plan - as is IAMS standing in the shoes of Ortiz-Maldonado relative to such benefits.

97. As a beneficiary under the Plan, Ortiz-Maldonado reasonably expected that the services provided by IAMS were covered under the Plan.

98. The services provided by IAMS were, in fact, benefits provided for under the terms of the Plan.

99. Despite coverage for air ambulance services under the Plan, Defendant improperly denied benefits provided by IAMS to Ortiz-Maldonado, in breach of the terms of the Plan.

100. Ortiz-Maldonado is entitled to obtain, *inter alia*, compensatory, declaratory, injunctive and other appropriate equitable relief relating to Defendants' breach of the terms of the Plan, wrongful refusal to pay, and interest accruing in connection therewith. If any other person or entity is deemed to have and/or share any fault and/or liability for the matters set forth above, such person or entity will be added as a named defendant to this

lawsuit at such time as that person or entity is identified, and notice is hereby given that such supplemental and/or amended filing will relate back to the date of initial filing in this lawsuit.

## INITIAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Triple-S Salud as follows:

A. Declaring that Ortiz-Maldonado (and IAMS through assignment) shall be entitled to reimbursement for the air medical services provided to and on behalf of Ortiz-Maldonado in the amount of at least $321,930 and making such award to Plaintiffs and against Triple-S Salud.

B. Declaring that Defendant breached, *inter alia*, its obligations to Ortiz-Maldonado under the Plan.

C. Awarding Plaintiffs interest at the rate of at least 1.5% per month or such other interest rate as set forth under applicable law since March of 2013 for violating prompt pay requirements under applicable law(s) and, in the alternative and/or in addition, prejudgment and post-judgment interest at the highest rate allowable by law.

D. Awarding the reasonable attorneys' fees and/or costs to the fullest extent permitted pursuant to law; and

E. Awarding Ortiz-Maldonado such other and further relief as the Court deems proper under the circumstances.

. . .

. . .

47705607.1

1   Dated this 28th day of January, 2015.

2                                           HOLM WRIGHT HYDE & HAYS PLC

4                                   BY:   /s/ Alan K. Hyde
5                                         Alan K. Hyde, Esq.
                                          Christopher S. Welker, Esq.
6                                         10429 South 51st Street, Suite 285
                                          Phoenix, Arizona 85044
7                                         Attorneys for Plaintiffs

786-0008

47705607.1

17